# UNITED STATES DEPARTMENT OF STATE ET AL. *v.* WASHINGTON POST CO.

No. 81–535.  Argued March 31, 1982—Decided May 17, 1982

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. O'CONNOR, J., concurred in the judgment.

*Deputy Solicitor General Geller* argued the cause for petitioners. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Elinor Hadley Stillman, Leonard Schaitman, Bruce G. Forrest,* and *Margaret E. Clark.*

*David E. Kendall* argued the cause for respondent. With him on the brief were *Edward Bennett Williams* and *Lon S. Babby.*\*

JUSTICE REHNQUIST delivered the opinion of the Court.

In September 1979, respondent Washington Post Co. filed a request under the Freedom of Information Act (FOIA), 5 U. S. C. § 552, requesting certain documents from petitioner United States Department of State. The subject of the request was defined as "documents indicating whether Dr. Ali Behzadnia and Dr. Ibrahim Yazdi . . . hold valid U. S. passports." App. 8. The request indicated that respondent would "accept any record held by the Passport Office indicating whether either of these persons is an American citizen." *Ibid.* At the time of the request, both Behzadnia and Yazdi were Iranian nationals living in Iran.

The State Department denied respondent's request the following month, stating that release of the requested information "would be 'a clearly unwarranted invasion of [the] personal privacy' of these persons," *id.,* at 14 (quoting 5 U. S. C. § 552(b)(6)), and therefore was exempt from disclosure under Exemption 6 of the FOIA.[1] Denial of respondent's request

---

\**Bruce W. Sanford, W. Terry Maguire, Erwin G. Krasnow,* and *Arthur B. Sackler* filed a brief for the American Newspaper Publishers Association et al. as *amici curiae* urging affirmance.

[1] Exemption 6 provides that the disclosure requirements of the FOIA do not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(6).

was affirmed on appeal by the Department's Council on Classification Policy, which concluded that "the privacy interests to be protected are not incidental ones, but rather are such that they clearly outweigh any public interests which might be served by release of the requested information." *Id.*, at 22–23.

While pursuing the administrative appeal, respondent brought an action in the United States District Court for the District of Columbia to enjoin petitioners from withholding the requested documents. Both sides filed affidavits and motions for summary judgment. Petitioners' affidavit, from the Assistant Secretary of State for Near Eastern and South Asian Affairs, explained that both Behzadnia and Yazdi were prominent figures in Iran's Revolutionary Government and that compliance with respondent's request would "cause a real threat of physical harm" to both men.[2] The District Court nonetheless granted respondent's motion for summary judgment.

---

[2] Petitioners' original affidavit stated:

"There is intense anti-American sentiment in Iran and several Iranian revolutionary leaders have been strongly criticized in the press for their alleged ties to the United States. Any individual in Iran who is suspected of being an American citizen or of having American connections is looked upon with mistrust. An official of the Government of Iran who is reputed to be an American citizen would, in my opinion, be in physical danger from some of the revolutionary groups that are prone to violence.

.            .            .            .            .

"It is the position of the Department of State that any statement at this time by the United States Government which could be construed or misconstrued to indicate that any Iranian public official is currently a United States citizen is likely to cause a real threat of physical harm to that person." Affidavit of Harold H. Saunders, Jan. 14, 1980, App. 17.

The affidavit reported that Yazdi, who had previously held the position of Foreign Minister, was currently a member of the Revolutionary Council and was responsible for solving problems in various regions of Iran. It also indicated that Behzadnia had been a senior official in the Ministry of National Guidance, but that the State Department had not received any report of his activities in recent weeks. *Ibid.* A supplemental affidavit, executed three months after the first affidavit, stated that Yazdi had been

Petitioners appealed, and the Court of Appeals for the District of Columbia Circuit affirmed. 207 U. S. App. D. C. 372, 647 F. 2d 197 (1981). As construed by the Court of Appeals, Exemption 6 permits the withholding of information only when two requirements have been met: first, the information must be contained in personnel, medical, or "similar" files, and second, the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy. *Id.*, at 373, 647 F. 2d, at 198. Petitioners argued that the first requirement was satisfied because the information sought by respondent was contained in "similar files." The Court of Appeals disagreed, holding that the phrase "similar files" applies only to those records which contain information " ' "of the same magnitude—as highly personal or as intimate in nature—as that at stake in personnel and medical records." ' " *Id.*, at 373–374, 647 F. 2d, at 198–199 (quoting *Simpson* v. *Vance*, 208 U. S. App. D. C. 270, 273, 648 F. 2d 10, 13 (1980), in turn quoting *Board of Trade* v. *Commodity Futures Trading Comm'n*, 200 U. S. App. D. C. 339, 345, 627 F. 2d 392, 398 (1980)). Because it found the citizenship status of Behzadnia and Yazdi to be less intimate than information normally contained in personnel and medical files, the Court of Appeals held that it was not contained in "similar files." Therefore, the Court of Appeals reasoned, there was no need to consider whether disclosure of the information would constitute a clearly unwarranted invasion of personal privacy; having failed to meet the first requirement of Exemption 6, the information had to be disclosed under the mandate of the FOIA. We granted certiorari, 454 U. S. 1030 (1981), to review the Court of Appeals' construction of the "similar files" language, and we now reverse.

_____

elected to the Iranian National Assembly, but that the activities of Behzadnia were still unreported. Supplemental Affidavit of Harold H. Saunders, Apr. 22, 1980, App. 41.

The language of Exemption 6 sheds little light on what Congress meant by "similar files." Fortunately, the legislative history is somewhat more illuminating. The House and Senate Reports, although not defining the phrase "similar files," suggest that Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information. After referring to the "great quantities of [Federal Government] files containing intimate details about millions of citizens," the House Report explains that the exemption is "general" in nature and seeks to protect individuals:

> "A *general exemption* for [this] category of information is much more practical than separate statutes protecting each type of personal record. The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information *by excluding those kinds of files the disclosure of which might harm the individual.*" H. R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966) (emphasis added).

Similarly, the Senate Judiciary Committee reached a "consensus that these [personal] files should not be opened to the public, and . . . decided upon a *general exemption* rather than a number of specific statutory authorizations for various agencies." S. Rep. No. 813, 89th Cong., 1st Sess., 9 (1965) (emphasis added). The Committee concluded that the balancing of private against public interests, not the nature of the files in which the information was contained, should limit the scope of the exemption: "It is believed that the scope of the exemption is held within bounds by the use of the limitation of 'a clearly unwarranted invasion of personal privacy.'" *Ibid.* Thus, "the primary concern of Congress in drafting

Exemption 6 was to provide for the confidentiality of personal matters." *Department of Air Force* v. *Rose*, 425 U. S. 352, 375, n. 14 (1976).

Respondent relies upon passing references in the legislative history to argue that the phrase "similar files" does not include all files which contain information about particular individuals, but instead is limited to files containing "intimate details" and "highly personal" information. See H. R. Rep. No. 1497, *supra*, at 11; S. Rep. No. 813, *supra*, at 9. We disagree. Passing references and isolated phrases are not controlling when analyzing a legislative history. Congress' statements that it was creating a "general exemption" for information contained in "great quantities of files," H. R. Rep. No. 1497, *supra*, at 11, suggest that the phrase "similar files" was to have a broad, rather than a narrow, meaning. This impression is confirmed by the frequent characterization of the "clearly unwarranted invasion of personal privacy" language as a "limitation" which holds Exemption 6 "within bounds." S. Rep. No. 813, *supra*, at 9. See also, H. R. Rep. No. 1497, *supra*, at 11; S. Rep. No. 1219, 88th Cong., 2d Sess., 14 (1964). Had the words "similar files" been intended to be only a narrow addition to "personnel and medical files," there would seem to be no reason for concern about the exemption's being "held within bounds," and there surely would be clear suggestions in the legislative history that such a narrow meaning was intended. We have found none.

A proper analysis of the exemption must also take into account the fact that "personnel and medical files," the two benchmarks for measuring the term "similar files," are likely to contain much information about a particular individual that is not intimate. Information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet respondent does not disagree that such information, if contained in a "personnel" or "medical" file, would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy. The passport informa-

tion here requested, if it exists, presumably would be found in files containing much of the same kind of information. Such files would contain at least the information that normally is required from a passport applicant. See 22 U. S. C. § 213. It strains the normal meaning of the word to say that such files are not "similar" to personnel or medical files.

We agree with petitioners' argument that adoption of respondent's limited view of Exemption 6 would produce anomalous results. Under the plain language of the exemption, nonintimate information about a particular individual which happens to be contained in a personnel or medical file can be withheld if its release would constitute a clearly unwarranted invasion of personal privacy. And yet under respondent's view of the exemption, the very same information, being non-intimate and therefore not within the "similar files" language, would be subject to mandatory disclosure if it happened to be contained in records other than personnel or medical files. "[T]he protection of an individual's right of privacy" which Congress sought to achieve by preventing "the disclosure of [information] which might harm the individual," H. R. Rep. No. 1497, *supra*, at 11, surely was not intended to turn upon the label of the file which contains the damaging information. In *Department of Air Force* v. *Rose, supra,* at 372, we recognized that the protection of Exemption 6 is not determined merely by the nature of the file in which the requested information is contained:

> "Congressional concern for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear. But Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files."

By the same reasoning, information about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than "personnel" or "medical" files.

In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." H. R. Rep. No. 1497, *supra*, at 11.[3] When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy.[4]

The citizenship information sought by respondent satisfies the "similar files" requirement of Exemption 6, and petitioners' denial of the request should have been sustained upon a showing by the Government that release of the information would constitute a clearly unwarranted invasion of personal privacy.[5] The Court of Appeals expressly declined to con-

---

[3] This view of Exemption 6 was adopted by the Attorney General shortly after enactment of the FOIA in a memorandum explaining the meaning of the Act to various federal agencies:

"It is apparent that the exemption is intended to exclude from the disclosure requirements all personnel and medical files, *and all private or personal information contained in other files* which, if disclosed to the public, would amount to a clearly unwarranted invasion of the privacy of any person." Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 36 (June 1967) (emphasis added).

[4] This construction of Exemption 6 will not render meaningless the threshold requirement that information be contained in personnel, medical, and similar files by reducing it to a test which fails to screen out any information that will not be screened out by the balancing of private against public interests. As petitioners point out, there are undoubtedly many Government files which contain information not personal to any particular individual, the disclosure of which would nonetheless cause embarrassment to certain persons. Information unrelated to any particular person presumably would not satisfy the threshold test.

[5] In holding that "similar files" are limited to those containing intimate details about individuals such as might also be contained in personnel or medical files, the Court of Appeals relied on its decision in *Simpson* v. *Vance*, 208 U. S. App. D. C. 270, 648 F. 2d 10 (1980). In *Simpson*, the

sider the effect of disclosure upon the privacy interests of Behzadnia and Yazdi, and we think that such balancing should be left to the Court of Appeals or to the District Court on remand. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR concurs in the judgment.

---

Court of Appeals held that portions of the State Department's Biographical Register could not be considered a "similar file" because such information was currently available to the public. *Id.*, at 275, 648 F. 2d, at 15. At the same time, *Simpson* held that release of information pertaining to an individual's marital status and the name of the individual's spouse "would not be appropriate." *Id.*, at 277, 648 F. 2d, at 17. Respondent contends that information concerning the citizenship of Behzadnia and Yazdi likewise cannot be withheld as contained in "similar files" because United States citizenship is a matter of public record.

Even under the Court of Appeals' holding in *Simpson*, however, the fact that citizenship is a matter of public record somewhere in the Nation cannot be decisive, since it would seem almost certain that the information concerning marital status that was withheld in *Simpson* would likewise be contained in public records. In addition, "personnel" files, which expressly come within Exemption 6, are likely to contain much information that is equally a matter of public record. Place of birth, date of birth, marital status, past criminal convictions, and acquisition of citizenship are some examples. The public nature of information may be a reason to conclude, under all the circumstances of a given case, that the release of such information would not constitute a "clearly unwarranted invasion of personal privacy," but it does not militate against a conclusion that files are "similar" to personnel and medical files.