**John D. HEMENWAY, Plaintiff,**

**v.**

**John HUGHES, et al., Defendants.**

**Civ. A. No. 84–0222.**

United States District Court,
District of Columbia.

Feb. 5, 1985.

John D. Hemenway, pro se.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the defendants' motion for summary judgment. The plaintiff, John D. Hemenway, seeks the release of certain information under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA) (the Act), allegedly held by the Bureau of Public Affairs at the United States Department of State (also Department, or State Department). The defendants State Department, John Hughes, Assistant Secretary of State for Public Affairs, and Alan Romberg, Deputy Assistant Secretary of State for Public Affairs, have moved for summary judgment on the grounds that they have carried out an adequate search and released all information not covered by FOIA exemptions. Because the Court concludes that the Department of State has satisfied the requirements of the Act and complied adequately with the plaintiff's request, summary judgment is granted in favor of the defendants.

## I.

In April 1983, John Hemenway submitted a FOIA request to the State Department for a "List of Persons Accredited to attend the Department of State press briefings, their news affiliation and citizenship." The plaintiff informed that Department that the information was "held by the Bureau of Public Affairs" and was "unclassified." In September of the same year the plaintiff wrote to the State Department again, stating that because he had received no response to his initial letter he assumed that the request had been denied. The plaintiff also explained that he intended to treat this second letter as a formal appeal of the "de facto denial."

On September 27, 1983, the Department of State acknowledged Hemenway's second letter and informed the plaintiff that it had not had an opportunity to review his request for information. Two months later, the defendant wrote to Hemenway again, this time informing him that his request had been denied because the information sought fell within two FOIA exemptions—5 U.S.C. § 552(b)(2) and (b)(6). In December 1983, Hemenway wrote to the Department explaining that he wished to appeal formally the denial. On January 3, 1984, with no response forthcoming, Hemenway notified the Department Appeals Officer that he intended to file suit in federal court.

In March 1984, the Department released to Hemenway a document entitled "List of Correspondents 1983". The document listed the names of all foreign correspondents accredited by the State Department, the news organizations that they represented, and the office telephone numbers and addresses for those organizations. The home telephone numbers and addresses of the correspondents were included in the original list, but were deleted by the Department from the copy received by Hemenway. Also included in the document was a geographical list of foreign correspondents that set out accredited correspondents and

their respective news organizations country by country. In a letter accompanying the List of Correspondents, the Department stated that:

> This list does not contain all of the information which you described, such as the citizenship of the correspondents. The only portions deleted are home telephone numbers and home addresses (and office phone numbers and addresses, if they are the same as the home numbers and addresses). These excisions have been made pursuant to FOIA exemption (b)(6), in that release of this information would be a clearly unwarranted invasion of the correspondents' personal privacy.

In their motion for summary judgment the defendants argue that the release of the List of Correspondents fulfilled their obligations under FOIA. The defendants point out that in the request letter the plaintiff asked for a "*List* of Persons Accredited to attend the Department of State press briefings, their news affiliation and citizenship." In an affidavit attached to the motion for summary judgment, defendant Hughes states that although the released list does not contain information about citizenship, "the Department does not maintain any list which contains such [citizenship] information." Thus, the defendants argue, the list was reasonably responsive to the plaintiff's request.

In the alternative the defendants insist that even if the list was not fully responsive, the Department is not under an obligation to release the requested information about citizenship because it is exempt from disclosure under 5 U.S.C. § 552(b)(6). The files containing the citizenship information, the defendants maintain, are similar to the type of medical and personnel files expressly protected by the (b)(6) general privacy exemption. To permit release would constitute a "clearly unwarranted invasion of personal privacy." Defendants' Memorandum in Support of Motion for Summary Judgment at 5.

In his opposition memorandum, the plaintiff contests both of these arguments. First, the plaintiff points out that citizenship information is routinely included in the applications that foreign correspondents are required to file when they apply for accreditation with the Department. According to the plaintiff, then, citizenship information was readily available to the defendants at the time the request was made, even if it was not contained in the form of a "list". Second, the plaintiff contends that as a matter of law citizenship information should not fall within the (b)(6) "personal privacy" exemption to FOIA.

## II.

Unlike other civil actions, a decision to grant or deny summary judgment in a FOIA suit does not hinge on the existence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56. Rather, summary judgment will be granted on the basis of agency affidavits "when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' " *Miller v. Casey,* 730 F.2d 773 (D.C. Cir.1984), *quoting Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). It is against this standard, therefore, that the affidavit and arguments submitted by the defendants must be evaluated.

### A.

The defendants are correct in pointing out that FOIA requires a requester to "reasonably describe" the records sought, *see* 5 U.S.C. § 552(a)(3). The agency faced with the request is not required to manufacture or compile new documents from disparate data sources within its files, but the agency must bear in mind that "the fundamental objective of FOIA is to foster disclosure, not secrecy", *Chrysler Corp. v. Brown,* 441 U.S. 281, 290 n. 10, 99 S.Ct. 1705, 1712 n. 10, 60 L.Ed.2d 208 (1979), *quoting Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), and to provide *information* to the people on matters of public

concern so as to "ensure an 'informed electorate ... vital to the proper operations of a democracy.'" *Dismukes v. Dep't of Interior,* Civil Action No. 84–0757, Dec. 19, 1984 (D.D.C.1984), *quoting* S.Rep. No. 813, 89th Cong., 1st Sess. 2–3 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5–6 (1966) (emphasis added), U.S.Code Cong. & Admin.News 1966, 2418. Thus, although a requester should not be permitted to alter the substance of his request once it has been made, *see Miller v. Casey,* 730 F.2d 773, 776–77 (D.C.Cir.1984); *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1354 n. 12 (D.C.Cir.1983), the agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act.

In this instance the request made by the plaintiff was ambiguous. The plaintiff asked for "the List of Persons Accredited to attend the Department of State press briefings, their news affiliation and citizenship." Clearly the request reasonably could be interpreted to ask either for a single list of accredited persons complete with citizenship information, or—as the plaintiff argues—for a list of accredited persons *and* any additional information the agency might have dealing with citizenship and news affiliation. Mindful that the plaintiff knew that the application forms containing the citizenship information existed at the time the request was made, and mindful that reference to those forms would have made the request clearer, the Court nevertheless cannot conclude that the plaintiff's demand for citizenship information fell outside the scope of the initial request. One need not get involved in a semantic debate over the meaning of the word "list" to understand what information the plaintiff wanted. Because the defendants had reasonably clear notice of what the plaintiff sought, the defendants had an obligation to provide any files containing citizenship information that they had, *provided* that the information was not covered by an exemption. It is to this remaining issue—the question of exemption—that attention now focuses.

B.

5 U.S.C. § 552(b)(6) exempts from disclosure all "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". Accordingly, to succeed under this exemption, an agency must establish that (1) the information requested is contained in "personnel and medical files" or "similar files", and (2) that disclosure would constitute a "clearly unwarranted invasion of personal privacy." *Department of State v. Washington Post Co.,* 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *Simpson v. Vance,* 648 F.2d 10, 12 (D.C.Cir.1980).

In *Department of State v. Washington Post Co.,* the Supreme Court made clear that Exemption 6 should not be limited "to a narrow class of files containing only a discrete kind of personal information." 456 U.S. at 602, 102 S.Ct. at 1961. The Court specifically rejected the lower court's position that "similar files" must be limited to those containing intimate details about an individual. Id. at 602–03 n. 5, 102 S.Ct. at 1961–62 n. 5. Instead, the Court held that the exemption must be interpreted broadly; to survive the initial inquiry the agency need only establish that the records in question apply to "a particular individual". Once this showing is made, the reviewing court must then move on to the second inquiry: whether the release of the information would constitute "a clearly unwarranted invasion of that person's privacy." *Id.* at 598, 600, 602–03, 102 S.Ct. at 1959, 1960, 1961–62.

Here, the citizenship information sought by the plaintiff allegedly is contained in an accreditation application form stored in Department files. In addition to citizenship information, the application form lists the correspondent's name, employer, position, current government press passes, criminal record (felonies only), date and place of

birth, Social Security number, home and office addresses, and home and office telephone numbers. The information requested by the application form is no different from the type of information normally found in personnel files. Whether the information is *precisely* the same as that which would be found in a personnel file is immaterial, for the information is sufficiently "personal to [a] particular individual," *Washington Post,* 456 U.S. at 602 n. 4, 102 S.Ct. at 1961 n. 4, to meet the threshold "similar files" inquiry.

The central question that remains is whether the release of the citizenship information constitutes a "clearly unwarranted" invasion of the correspondents' privacy. In drafting Exemption 6, House sponsors explained that "[t]he limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to government information by excluding those kinds of files the disclosure of which might harm the individual." H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5, 11 (1966), U.S.Code Cong. & Admin.News 1966, 2428. This concern for "balancing interests" was reiterated in the Senate Report: "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). The Senate Report went on to note that although balancing was not always easy, a "workable formula" was possible:

> It is not an easy task to balance the opposing interests, but it is not an impossible one either. It is not necessary to conclude that to protect one of the interests, the other must, of necessity, either be abrogated or substantially subordinated. Success lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure.

S.Rep. No. 813 at 3. *See also Department of Air Force v. Rose,* 425 U.S. at 371, 372–74, 96 S.Ct. at 1603, 1604–05.

In this instance careful balancing of the interests of both parties weighs in favor of exempting the requested citizenship information from disclosure. An individual's citizenship, like medical records, religious and sexual preferences, or nationality, is not a matter that is normally exposed to public view. A passport—which the plaintiff correctly notes contains citizenship information—is not a document that a member of the general public might inevitably see in the course of everyday life, or indeed would be entitled to see. Although a passport must be shown to a government official to ensure safe passage across international borders, the degree of intrusion required in that situation is far less than that required by the "open access" approach advocated by the plaintiff. Indeed, where international travel is involved, the intrusion is limited only to that required to maintain national security and identify nonnationals. An individual might be required to show his passport to a government official while living in a foreign country, but information contained in the passport is not disseminated to the public at large.

Under certain circumstances it is not inconceivable that revelation of one's citizenship could place an individual in jeopardy. Nationals from some countries face persistent discrimination within particular communities in this country. Similarly, nationals from certain parts of the world are potential targets for terrorist attacks. The risk of harm might significantly increase if the public retained open access to citizenship information. It is precisely these concerns that are contained in the affidavit of Assistant Secretary John Hughes. Defending the use of the exemption here, Secretary Hughes notes that:

> A substantial number of the correspondents accredited to the Department are citizens or nationals of countries other than the United States. Many of the correspondents, in the course of their

professional duties, are required to travel internationally, including travel to countries whose relations with the countries of the correspondents' nationalities (including correspondents who are citizens of the United States, where applicable) may be unfriendly or in flux. Such situations are particularly likely to arise because news correspondents are often subject, given the nature of their work, to being sent precisely to those areas of the world where conflict and disorder are current. *In such circumstances the nationality of the individual could well become a basis for personal harassment or jeopardy to life or limb, or for refusal of entry which causes professional damage to a news correspondent. Jeopardy, in many areas today, may come from terrorist or dissident groups, rather than from public authorities.* Such groups frequently seek out targets which will gain publicity for causes; these are not necessarily individuals against whom the groups have specific grievances. Attacks on news correspondents of certain nationalities would logically have that effect.

Affidavit of John Hughes at 2–3 (emphasis added). *See also Washington Post,* 456 U.S. at 597–98 n. 2, 102 S.Ct. at 1959–60 n. 2 (acknowledging the State Department's concern for the safety of Iranian officials claiming U.S. citizenship).

Notwithstanding the affidavits submitted by journalists Allan C. Brownfield and Charles Lester Kinsolving which, based on evidence of personal and professional experience, downplay the danger posed by disclosure of citizenship information, the concerns expressed by the Assistant Secretary of State are not insignificant. Surely it is not irrational to conclude, as defendant Hughes does, that by the nature of their work certain correspondents may be susceptible to harassment or bodily harm. Indeed, it would be imprudent to disregard these concerns.

At the same time, however, it is the responsibility of the Court to ensure that the government provides the *"fullest* responsible disclosure." S.Rep. No. 813 at 3. Were it the case that the defendants had issued a blanket denial for all information, the plaintiff's position would be more persuasive. Yet precisely the opposite is true. The defendants have released a list of accredited correspondents with their office telephone numbers and addresses. As a practical matter, therefore, the defendants have provided the plaintiff with more information than he originally sought. Armed with this information, the plaintiff is free to call any of the correspondents directly and request citizenship information.[1] In effect, then, the Department has placed Hemenway in a position where he may now pursue his inquiry as he sees fit. If an individual correspondent has reason to believe that he might be jeopardized by the release of such information, he is free to decline to respond. Conversely, if release poses no danger and in the eyes of a given correspondent does not place his or her family in jeopardy, he/she can volunteer release of this information. Thus, in the same way that an individual ordinarily should retain the choice whether to make public information about his religious and sexual preference or ethnic background, the decision to release citizenship information here is also left to the individual's own discretion.

Viewed in this light, the defendants' partial release of information skillfully protects the interests of all while still providing substantial disclosure. Given the pressures associated with modern international politics, a blanket release of citizenship information, made without regard to the interests or concerns of individual correspondents, would constitute a "clearly unwarranted invasion of personal privacy" that might result in the type of "harm to the individual" that Congress clearly hoped to avoid. The response fashioned by the defendants—the release of the List of Corre-

1. In one section of the released document correspondents are listed by geographic region. Thus, as a practical matter a relatively accurate but general assumption about the correspondents' citizenship might be ascertained from the list without further investigation.

spondents—provides the proper balance between the individual's right to privacy and the public's right to know that the Congress struggled to achieve when it drafted Exemption 6.

### III.

For the reasons stated above, the Court concludes that the affidavit submitted by the defendants describes "the justifications for nondisclosure" with sufficient detail and logic, *see Miller v. Casey, supra,* to permit a grant of summary judgment in favor of defendants.

Accordingly, the defendants' motion for summary judgment is, this 5th day of February 1985, hereby granted. This cause stands dismissed with prejudice.