**AKRON STANDARD DIVISION OF EAGLE–PICHER INDUSTRIES, INC., Plaintiff-Appellee,**

v.

**Raymond DONOVAN, Secretary of U.S. Department of Labor, Defendant-Appellant.**

No. 84–3650.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 26, 1985.

Decided Jan. 8, 1986.

Emily M. Sweeney, Asst. U.S. Atty., Cleveland, Ohio. Frank A. Rosenfeld (argued), Leonard Schaitman, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for defendant-appellant.

James L. Bickett (argued), David H. Shaffer, Stephen B. Spolar, Joondeph & Shaffer, Akron, Ohio, for plaintiff-appellee.

Before MERRITT and WELLFORD, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Hollis Palmer, at that time an employee of Lectromelt Casting and Machinery Company (Lectromelt) and chairman of the union safety committee, filed a complaint with the Occupational Safety and Health Administration (OSHA), charging certain safety violations at this Akron, Ohio plant. OSHA inspectors cited the plant for several violations, and shortly afterward Palmer was suspended for five days for alleged absence from his work station and disobeying instructions. Palmer reacted by organizing a wildcat strike at Lectromelt. He was then discharged together with other strikers. Palmer then filed two complaints, one with OSHA and the other with the National Labor Relations Board (NLRB) asserting that Lectromelt had suspended him and later had fired him in retaliation for his safety complaint and his union activity.[1] During the course of their several independent investigations, OSHA and NLRB interviewed a number of witnesses, including Palmer's former fellow employees. The OSHA investigator, in accordance with usual procedures, was allowed access to the NLRB case file, including summaries of testimony of witnesses interviewed by the Board investigator. OSHA declined to prosecute Palmer's retaliation complaint, but the General Counsel for the NLRB accepted his complaint which is still pending with that agency.[2]

During the course of the NLRB investigation Akron Standard requested that OSHA disclose its entire investigatory file under the Freedom of Information Act (FOIA). OSHA declined to disclose this information on the ground that disclosure would interfere with the pending NLRB proceedings and invade the privacy of the individuals referred to in the file or those who furnished information to OSHA. In response to Akron Standard's appeal, the Department of Labor (parent agency of OSHA) disclosed a number of documents, but withheld some portions of the file, again claiming (1) privacy and interference with the NLRB investigation, and (2) the need to protect internal agency opinions

1. Lectromelt was, at the time of the incidents here, a division of Akron Standard Division of Eagle-Picher Industries, but Akron Standard sold the plant shortly after Palmer's discharge. Akron Standard, however, remains one of the parties named in Palmer's NLRB complaint.

2. An Administrative Law Judge (ALJ) dismissed the complaint, finding (1) that Palmer's suspension was for cause and was not retaliation for safety or union related activity and (2) that the issue over the propriety of the discharge is now moot because of an offer by the buyers of Lec-

tromelt to reinstate anyone who drops his NLRB complaint. On April 11, 1984, a panel of the NLRB affirmed the ALJ's finding that the suspension was for cause but it remanded the case for further determination of whether the later discharge violated the Labor Relations Act, holding that the reinstatement offer did not moot Palmer's complaint since he turned the offer down. On remand, the ALJ found that Palmer was lawfully discharged and he has once again appealed to the Board.

and recommendations and the identities of confidential sources.

Shortly before the Labor Department issued its decision on the company's appeal, Akron Standard filed suit in district court under FOIA, seeking disclosure of the withheld portions of the OSHA file. In response to the suit, the Department of Labor filed an affidavit by Sofia P. Petters of the Office of the Solicitor of Labor, setting forth the history of the case and the Department's justification for its withholding of some parts of the file. She explained that the full file had been located and that "the vast majority of the newly discovered documents will be released." She added, however, that some portions would not be disclosed. The withheld portions fell into three categories: (1) internal memoranda, for which the Department claimed Exemption 5, 5 U.S.C. § 552(b)(5); (2) information concerning Palmer's job competence (which was gathered in order to determine whether he was disciplined and dismissed only for poor job performance), for which it claimed Exemption 7(C), 5 U.S.C. § 552(b)(7)(C) (the law enforcement privacy exemption); and (3) the identities of some of the employee witnesses, each of whom was given the standard written assurance that his identity would be kept confidential, for which the agency claimed Exemption 7(D), 5 U.S.C. § 552(b)(7)(D). We are called upon to decide the propriety of these latter two claimed exemptions on appeal to this court.

(The administrative internal memorandum exemption is not the subject of this appeal.)

## I. *Information on Employee's Job Performance—Exemption 7(C)*

The Secretary contends that under claimed Exemption 7(C) the individual's privacy interest must be balanced against the public's interest in disclosure. In the present case, he noted, Palmer claimed that the company had retaliated against him for filing a safety complaint, despite the employee's right to file a complaint without suffering discrimination for doing so under Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c).[3] The Secretary deleted

> information which could be interpreted to reflect unfavorably upon complainant's performance, as well as the performance of others, in terms of the performance of their work. Employees have an extremely significant privacy interest in matters such as this....

As for the public interest in disclosure to be balanced against this privacy interest, the Secretary's representative stated:

> Plaintiff here has essentially stated that the purpose for which it seeks the information is to supplement its discovery or otherwise use the information in the unfair labor practice proceeding currently pending before the NLRB. Interests such as this have repeatedly been recognized to be private not public ones and

---

**3.** 29 U.S.C. § 660(c):

(c)(1) No person shall discharge or in any manner discriminate against any employee because such employee had filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he

deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

accordingly have been given no weight in the balance under Exemption 7(C).

Since "the public interest is in the nondisclosure, not the disclosure, of such information," the Secretary took the position in claiming the "privacy" exemption, that it would frustrate Congress' intent to protect employees who file complaints to reveal this information to Akron Standard.

We look to whether public access (by Akron Standard or others) constitutes an invasion of privacy with respect to job performance of the complaining employee. The Secretary contends that Palmer's privacy interests would be invaded because to disclose information about his job performance might subject Palmer to embarrassment or might have an adverse impact upon him. The language relied upon by the Secretary in Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), is that disclosure would "constitute an unwarranted invasion of personal privacy." The language of this subsection is very similar to that of Exemption 6, 5 U.S.C. § 552(b)(6), which would exempt "information of a personal nature where disclosure would constitute a clearly unwarranted invasion of personal privacy." The language of Exemption 6 has been construed to apply to personal matters involving such things as a "person's health, drinking habits or financial circumstances." *Common Cause v. Nuclear Regulatory Commission*, 674 F.2d 921, 938 (D.C.Cir. 1982). That case observed also that the personal privacy exemption, Exemption 6, "was not intended to shelter substandard performance," 674 F.2d at 938, although the court was considering there a government official's job performance rather than a private party's job performance. The above rationale of *Common Cause* may be somewhat analogous to the personal privacy exemption here claimed as to Palmer. We have before acknowledged "as a matter of general principle, that the FOIA mandates a policy of broad disclosure." *Kiraly v. F.B.I.*, 728 F.2d 273, 276 (6th Cir.1984),

cert. *denied sub nom., Kiraly v. Clark*, 466 U.S. 959, 104 S.Ct. 2171, 80 L.Ed.2d 554 (1984) (citing *Church of Scientology v. U.S. Dept. of Defense*, 611 F.2d 738 (9th Cir.1979)). To put it another way,

> FOIA exemptions are to be narrowly construed in accordance with the legislative purpose of Congress that disclosure rather than secrecy is the dominant objective of the Act.

*Department of the Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976), *cited in Radowich v. United States Attorney*, 658 F.2d 957, 965 (4th Cir.1981).

■ The burden of establishing an exemption, furthermore, is upon the Secretary. *Kiraly*, 728 F.2d at 276. In discussing this exemption this court discussed whether the investigative material involved "intimacy" or where revelation of the kind of information involved might subject the party to "physical danger," *Id.* at 277, or to "potential retribution," *Id.* at 278, once it was first established that a personal privacy interest existed. *Kiraly*,[4] of course, involved investigative information gathered in the course of a racketeering and murder investigation; a situation involving somewhat more sensitive and compelling concerns than those here present, and there the court recognized that the information was of a confidential nature and its revelation would constitute an unwarranted invasion of personal privacy. The district court had an adequate basis for its determination that disclosure was here appropriate and not an invasion of privacy. We do not agree with the Secretary that the privacy interest under the circumstances was "compelling" as claimed merely because it "could be interpreted to reflect unfavorably upon [Palmer's] performance." Appellant's Brief, p. 14. The thrust of the investigation in respect to an OSHA violation complaint was not upon Palmer's job performance but rather upon whether Ak-

---

**4.** *See also Brown v. F.B.I.*, 658 F.2d 71, 75 (2d Cir.1981); *Kuehnert v. F.B.I.*, 620 F.2d 662 (8th Cir.1980); *Librach v. F.B.I.*, 587 F.2d 372 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct.

1222, 59 L.Ed.2d 459 (1979); *Stein v. Dept. of Justice and F.B.I.*, 662 F.2d 1245, 1260 (7th Cir. 1981).

ron Standard was guilty of violations of OSHA safety related standards pertaining to safety in the workplace. Under the circumstances here there is no compelling interest under the claimed FOIA Exemption 7(C) to protect Palmer with regard to quality of his work performance.[5]

It is important here to note that the quality of Palmer's job performance had been fully explored in public proceedings before the NLRB heretofore, and there is little remaining basis at this juncture to construe broadly the claimed exemption under these circumstances. These matters and issues have effectively come into the public domain through prior hearings and testimony of some of the witnesses who gave information to OSHA. The public's interest in disclosure concerning the nature and extent of the agency's investigation on a charge of retaliation is neither insignificant or of "no weight" as claimed by the Secretary, and we conclude that the ordered disclosure by the district court was not clear error.

II. *Identity of Employees Who Gave Information—Exemption 7(D)*

█ The Department of Labor also withheld from disclosure the names of several of Akron Standard's former employees who had provided information to OSHA or to the NLRB under a standard form provision that their identities would be kept confidential. This material was withheld under Exemption 7(D), which allows information in law enforcement files to be withheld if its production would "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). The Secretary may show that a worker who provides information to OSHA is a confidential source

by proving *either* that the employee-witness provided information "under an express promise of confidentiality *or* in circumstances from which such an assurance could be reasonably inferred." Conf.Rep. No. 93–1380, 93rd Cong., 2nd Sess. 13 (1974). *Radowich v. United States Attorney, District of Maryland,* 658 F.2d 957, 959–60 (4th Cir.1981); *Lame v. Dept. of Justice,* 654 F.2d 917, 923 (3d Cir.1981); [and other cases].

*L & C Marine Transport, Ltd. v. United States,* 740 F.2d 919, 923–24 (11th Cir. 1984).

Exemption 7(D) allows the government to deny disclosure of any law enforcement records when disclosure would "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D).[6] The district court's refusal to recognize Exemption 7(D) in this case, based on what he characterized as the routine and conditional nature of the confidentiality grant and based on the fact that the investigation had been completed, appears to be contrary to the reasoning of a number of other courts that have faced the same question. *L & C Marine Transport, Ltd., supra; T.V. Tower, Inc. v. Marshall,* 444 F.Supp. 1233 (D.D.C.1978); *Borton, Inc. v. OSHA,* 566 F.Supp. 1420 (E.D.La. 1983); *U.S. Steel Corp. v. United States Dept. of Labor,* 558 F.Supp. 80 (W.D.Pa. 1983); *Miles v. United States Dept. of Labor,* 546 F.Supp. 437 (M.D.Pa.1982); *Lloyd & Henniger v. Marshall,* 526 F.Supp. 485 (M.D.Fla.1981). We therefore pursue the inquiry beyond the basis stated by the trial judge.

The Secretary, apparently by inadvertence, revealed the names of several employee-witnesses and a summary of their statements, but has not disclosed their statements. There remain undisclosed names and statements of other witnesses in this category.

---

**5.** We reiterate, at the same time, the observation of this court and others that FOIA is not to be utilized merely for benefit of a private litigant to reveal purely personal and private information obtained in a government investigation, nor do we accept Akron Standard's contention that merely because the OSHA investigation and file is closed that a proper exemption may not be claimed by the agency. *See Brown v. F.B.I.,* 658 F.2d at 75.

**6.** Akron Standard does not dispute that the records at issue meet the threshold test for Exemption 7 that they be "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

We must decide whether, under the circumstances, production of these witnesses' statements without revealing their names would destroy the confidentiality of their identity under Exemption 7(D).

The district court acknowledged in respect of Exemption 7(D) that information given under an express or implied guarantee of confidentiality may be protected, citing *Radowich v. United States Attorney,* 658 F.2d 957, 960 (4th Cir.1981). *See also L & C Marine Transport,* 740 F.2d at 925 n. 8. Such information, given in confidence, may remain protected even after the investigative file is closed, to the extent confidentiality was not waived by the giving of oral testimony or otherwise. *Radowich v. United States Attorney, supra; Brown v. F.B.I., supra; Kiraly v. F.B.I., supra.*

The district court held that, since witnesses had already testified concerning Palmer's charges before the Board (perhaps on more than one occasion), the assertion of confidentiality to protect their identity was not supportable, taking into account the nature of the investigation. It is also clear that witnesses here involved have no basis to fear retaliation from Akron Standard since that company has long since disposed of its interests in the plant in question. We remand to the district court for further consideration, however, that aspect of his order directing the disclosure of the statements of witnesses whose identity has not been revealed.

The Board concedes in its brief that Exemption 7(D) provides that information provided by a confidential source in a civil, as opposed to a criminal, investigation can be withheld only if its disclosure would reveal the identity of the source. Ordinarily, that would mean that at least a portion of the statement could be released, so long as outsiders would not be able to determine who the source was from studying the edited statement. Here, the full texts of the witnesses' statements have been withheld, but only because no edited version can safely be released. The Petters affidavit shows that it would be too easy in this case to figure out who made each statement because so few witnesses were involved and because too many unique details would be found in each statement.

Appellant's Brief, p. 23. *See Radowich v. United States Attorney,* 658 F.2d 957 (4th Cir.1981).

Since the only remaining issue with respect to claimed Exemption 7(D) relates to whether the remaining statements of witnesses whose identities have not already been disclosed may be edited "safely" so that the particular source of the statement will not be divulged, we are disposed to believe that only this aspect of the dispute should be remanded to the district court. It should determine whether redaction of each statement may effectively be accomplished and yet still protect the identity of the witness and his or her confidentiality. This remand is directed with the observation that the content of statements of witnesses whose identity has been divulged already should be taken into account by the district court in carrying out the remand together with our decision that personal privacy interests of Palmer under Exemption 7(C) under these circumstances do not shield from disclosure that information which may relate to his job performance. There should be eliminated from the material turned over to Akron-Standard under Exemptions 7(C) or 7(D) comments of employees about the safety of the workplace, which was the primary purpose of the OSHA investigation. *See L & C Marine Transport,* 740 F.2d at 923.

In summary, then, under the particular circumstances of this case we find the district court's conclusion that the personal privacy exemption claimed under Exemption 7(C) has not been proved applicable is not erroneous, and that the statements of witnesses whose identity has been made known and summaries furnished should be turned over to Akron Standard because Exemption 7(D) has effectively been waived. As to the remaining statements of undisclosed witnesses we remand this as-

pect of the controversy to the district court to decide *in camera* whether these statements may be redacted to protect the identity of the persons who furnished this information to OSHA.

CELEBREZZE, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in part II of the majority's opinion. However, since I believe that the majority incorrectly concludes that Palmer lacks a privacy interest in the investigatory records compiled by the Occupational Safety and Health Administration (OSHA), I respectfully dissent to part I of the majority's opinion.

The focus of this case, as the majority indicates, is upon records which OSHA compiled during an investigation to discern whether Palmer was discharged by his employer, Lectromelt Casting and Machinery Company (Lectromelt), a division of Akron Standard Division of Eagle-Picher Industries (Akron Standard), for filing a previous complaint with OSHA, which resulted in OSHA citing Lectromelt for several violations, or for absenteeism and refusal to obey orders, as Lectromelt purported. After completing its investigation, OSHA declined to pursue the matter. The General Counsel of the National Labor Relations Board ("NLRB"), however, determined after its investigation to file charges against Lectromelt under the National Labor Relations Act; those proceedings are still pending. Akron Standard, subsequently, requested the disclosure of the documents compiled during OSHA's investigation under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982). The district court granted Akron Standard's request for disclosure reasoning that Palmer lacked any cognizable "privacy interest" under Section 552(b)(7)(C), 5 U.S.C. § 552(b)(7)(C) (1982), in the investigatory files.

Investigatory records compiled for law enforcement purposes are exempt from disclosure under the FOIA to the extent that their production would "constitute an unwarranted invasion of *personal privacy.*" 5 U.S.C. § 552(b)(7)(C) (1982) (emphasis added). The question in this case is whether Palmer has a privacy interest in the investigatory records which relate to his job competency. Although "personal privacy" is not defined by the FOIA, the legislative history of the analogous "clearly unwarranted invasion of personal privacy" exemption of Section 552(b)(6), 5 U.S.C. § 552(b)(6) (1982), is of some aid in determining the parameters of privacy interests protected by Section 552(b)(7)(C). The Senate Report drew a distinction between, "For example, health, welfare and selective service records [which] are highly personal to the persons involved, [and] facts concerning the award of a pension or benefits [which] should be disclosed to the public." S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). Congress intended to prevent the disclosure of "intimate details" whose revelation might harm a private individual. H.Rep. No. 1497, 89th Cong., 2d Sess. 11, *reprinted in* 1966 U.S.Code Cong. & Ad. News 2418, 2428. Thus, objective data "such as place of birth, date of birth, date of marriage, employment history ... is not normally regarded as highly personal." *United States Department of State v. Washington Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358 (1982); *see Washington Post Co. v. United States Department of Health and Human Services,* 690 F.2d 252, 261 (D.C.Cir.1982) (disclosure of list of past employers only raises "minimal" privacy interests). On the other hand, subjective evaluations of performance, like disciplinary records, raise important privacy concerns. *See Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

This case concerns remarks made to OSHA investigators by Palmer's co-workers pertaining to his job performance. Subjective job evaluations made by employers clearly raise privacy concerns. *Ripskis v. Department of Housing and Urban Development,* 746 F.2d 1, 3 (D.C.Cir.1984) (per curiam); *Associated Dry Goods Corp. v. NLRB,* 455 F.Supp. 802, 815 (S.D.N.Y. 1978); *Celmins v. United States Department of Treasury, Internal Revenue Service,* 457 F.Supp. 13, 17 (D.D.C.1977); *see*

*Rose,* 425 U.S. at 377, 96 S.Ct. at 1606 (disclosure of an "evaluations of ... work performance" raise privacy interests). Likewise, information concerning an employee's individual career has been described as raising "weighty" privacy interests. *Columbia Packing Co. v. United States Department of Agriculture,* 417 F.Supp. 651, 654 (D.Mass.1976), *aff'd,* 563 F.2d 495 (1st Cir.1977); *see Core v. United States Postal Service,* 730 F.2d 946, 948–49 (4th Cir.1984) (list of unsuccessful applicants protected by Section 522(b)(6)). The rationale for protecting information of this type is "[t]he sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence." *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 318, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979). Further, performance evaluations are inherently subjective and ambiguous; reasonable people may differ on how well an employee is doing his job, depending upon which factors, like output, attitude, and punctuality, the evaluator deems the most significant. Considered in this light, I see no basis to distinguish between an employer's and a co-worker's evaluation of job performance. Comments upon job performance by either employers or co-employees are inherently subjective, possibly biased, and likely to cause embarrassment or economic injury upon disclosure. Accordingly, I believe that comments by co-workers pertaining to a co-worker's job performance raise substantial privacy interests. Nevertheless, the majority concludes that the investigatory files in this case should be disclosed, relying upon *Common Cause v. NRC,* 674 F.2d 921 (D.C.Cir.1982), and reasoning that the NLRB proceedings have put Palmer's job competency in the public domain.

The majority's reliance upon *Common Cause* is misplaced. *Common Cause* concerned a decision by the Nuclear Regulatory Commission to hold closed meetings concerning the agency's budget. *Common Cause,* 674 F.2d at 923. The District of Columbia Court of Appeals held that such meetings were not exempt under Section 552(b)(6), reasoning that the FOIA "was

not intended to shelter substandard performance by *government executives.*" *Common Cause,* 674 F.2d at 938 (emphasis added). The court's holding in this regard was supported by the Senate Report which indicated that Section 552(b)(6) should not be interpreted to shield discussions concerning the competency of a government official. *Common Cause,* 674 F.2d at 938. In contrast, the case at bar concerns not only a private employee but also a lower-level private employee. *See Common Cause,* 674 F.2d at 938 (Section 552(b)(6) "provides greater protection to private individuals ... and to lower-level government employees"). Further, no legislative history indicates that discussions concerning a lower-level private employee's job proficiency is outside the protection of Section 552(b)(7). Finally, the District of Columbia Court of Appeals has not extended the holding of *Common Cause* to discussions pertaining to the competency of private employees. *Ripskis v. Department of Housing and Urban Development,* 746 F.2d 1 (D.C.Cir.1984). The majority's reliance upon *Common Cause* is, accordingly, without merit.

Next, the majority reasons that since Palmer's job competency has been fully explored at a prior NLRB proceeding, these matters are within the public domain. The majority's entire discussion of this issue, however, begins with the incorrect assertion that, "The thrust of the investigation in respect to an OSHA violation complaint was not upon Palmer's job performance but rather upon whether Akron Standard was guilty of violations of OSHA safety related standards pertaining to safety in the workplace." In fact, OSHA's investigation concerned whether Palmer was discharged for filing a complaint with OSHA or was fired for absenteeism and failure to obey orders. Consequently, the crux of the investigation was Palmer's job performance.

The majority contends that since Palmer's job competency has been fully explored before the NLRB, these matters are in the public domain. This contention, however, misses the point. The issue, in this case,

isn't whether Palmer has a privacy interest in information concerning his job competency which has been made public, but rather is whether Palmer has a privacy interest in information relating to his job performance which has not been made public. The fact that the majority of the statements made to the OSHA investigators have been made public in no way affects Palmer's privacy interest in the statements which have not been made public. *See Kiraly v. FBI*, 728 F.2d 273, 280 (6th Cir.1984) ("The mere act of testifying at trial therefore should not open private files to public disclosure."); *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981) ("Mr. Brown's assertion that, by testifying, Ms. Shepardson has waived her right to privacy is without foundation in law or logic.... While it is true that Ms. Shepardson cannot suppress those facts which have become a matter of public record, she retains her right to privacy as to other personal matters.")

The majority finally seeks to support its position by reasoning that "there is no compelling interest" to withhold the information under Section 552(b)(7)(C) and that "[t]he public's interest in disclosure concerning the nature and extent of the agency's investigation" is not insignificant. The problem with these statements is that they represent a balancing between Palmer's privacy interest and the public's interest in disclosure. This issue simply is not before this Court since the district court concluded that Palmer lacked any privacy interest at all in the records.

For the foregoing reasons, I would affirm in part, reverse in part, and remand this case to the district court to balance Palmer's privacy interest against the public interest in disclosure.