# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2021-0274, <u>Andrea Amodeo-Vickery v. Town of Salem</u>, the court on May 20, 2022, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The respondent, the Town of Salem (Town), appeals orders of the Superior Court (<u>Messer</u>, J.) finding in favor of the petitioner, Andrea Amodeo-Vickery, on her petition for access to certain governmental records pursuant to the Right-to-Know Law, RSA chapter 91-A, and awarding her attorney's fees and costs, <u>see</u> RSA 91-A:8 (2013). We reverse.

The following facts either were found by the trial court or reflect the content of documents in the appellate record. On September 18, 2020, the petitioner requested that the Town Manager provide the following documents pursuant to the Right-to-Know Law:

> all written communications between you and any employee at the New Hampshire Office of the Attorney General, from January 1, 2018 through present, regarding the following matters:
>
> 1. A list of names of any former Salem Police Officers who had been approved by the [New Hampshire Retirement System] for Accidental Disability Retirement for duty related injuries suffered while employed by the Salem Police Department and whose name and information was included in the "binder" that you provided to the [Office of the Attorney General] and which you referred to in your September 9, 2020 letter to [that office].
>
> 2. A list of names of any current or recently separated Salem Police Department officers whose names were included as well as information and evidence you purport to have included in said "binder" that you provided to [the Office of the Attorney General] as referred to in your September 9, 2020 letter.
>
> 3. Any and all written correspondence between you and/or [the Town human resources director] and any employee of the NH Attorney General's Office wherein you described said past, present or future accidental disability retirees as committing "fraud" in regard to their disability claims.

<u>See</u> RSA 91-A:4, IV (Supp. 2021).

The Town responded to the request by providing a single document — a 10-page letter from the Town human resources director to the deputy attorney general dated March 6, 2020, in which the human resources director, among other things, observed that the Town had more retirees receiving a "police accidental disability benefit" than any other municipal or county employer. (Bolding omitted.) The human resources director stated that it was "well known" that the Salem Police Department had "questionable claims" for accidental disability retirement. (Quotation omitted). She further stated that the president of the police union had acknowledged "that some claims have been fraudulent in the past." Yet, she claimed, Town police union members "take no responsibility [for] assisting the Town [in] trying to stop 'questionable claims.'" The human resources director also stated that the accidental disability retirement benefit "has been exploited and has become unsustainable" because "[e]mployees facing disciplinary action suddenly have a . . . claim, [and] are enhancing injury information to their doctors and Medical Providers [are] not doing their due diligence [when] completing medical forms." She opined that "[a]ccidental [d]isability is a very lucrative benefit and has become an entitlement in [the Town]. Employees who have worked for the Town as little as 2 years have gone out on a disability pension with full health benefits for life." In the remainder of the letter, the human resources director provided information about the workers' compensation claims of certain police department employees and about certain disability retirees who had applied for law enforcement jobs.

In a subsequent email to the Town, the petitioner stated that the March 2020 letter had "partially answered . . . paragraphs 1 and 2" of her Right-to-Know request, but "did not answer in any way . . . paragraph 3" of the request. The Town responded that "there are no . . . emails or correspondence that exist responsive to" the third paragraph of her Right-to-Know request.

Around the same time, the petitioner submitted a Right-to-Know request to the Office of the New Hampshire Attorney General (OAG), seeking, among other things, "[a]ny and all written correspondence, including emails, between [the OAG] and any employee of [the Town] wherein . . . past, present or future accidental disability retirees were described as engaging in possibly fraudulent activity in regard to their disability claims." (Emphasis omitted.) The OAG responded by disclosing, among other documents:

- A February 24, 2020 email from the Town Manager to the OAG asking "to sit down with someone from [the OAG] to make [that office] aware of possible fraudulent activity" involving "claims of disabilities."

- A March 12, 2020 email from the human resources director to the OAG, thanking OAG attorneys for speaking with her and the Town Manager on

March 6, 2020 and clarifying the difference between criminal actions and actions that are wrong, but are not criminal. The human resources director stated that "[t]he cost to the taxpayer" from such actions "along with the waste of taxpayer funds and the ramification[s] are a huge concern to [the Town]." She also provided information about "a very public case that turned into another duty related disability retirement for [the Town]."

- An April 24, 2020 email from the Town Manager to the OAG noting that the Town had "25 police disability retirees and the next closest municipality, inclusive of counties and the jails, was Manchester at 11," asking whether the OAG had reviewed information the Town had provided in a binder to "decide if this warrants an investigation," and opining that "what is going on is [not] right and [that] . . . the tax payers are being unfairly charged."

In December 2020, the petitioner filed the instant petition alleging that the Town's assertion that it had no emails responsive to the third paragraph of her Right-to-Know request "was plainly false" and violated the Right-to-Know Law. See RSA 91-A:4, :7 (Supp. 2021). The trial court held a hearing with documents and offers of proof in early January 2021. See RSA 91-A:7. At the hearing, the Town characterized the third paragraph of the petitioner's request as seeking only correspondence in which the Town Manager specifically "described a retiree as committing fraud." The Town Manager testified that he "never stated that [Town employees] committed fraud." Accordingly, the Town argued, "[t]here were no records responsive to [paragraph] three as it was worded."

The trial court granted the petition, ruling that the Right-to-Know Law required the Town to construe the petitioner's September 2020 request liberally and that the Town's narrow construction was unreasonable and violated the Right-to-Know Law. The court determined that "[u]pholding the Town's refusal to disclose documents" based upon its unduly narrow interpretation of the petitioner's request "would require those who submit Right-to-Know requests to use magic words to receive information." The court opined, "This high burden is inconsistent with [the Right-to-Know Law's] purpose of open, reasonable access to government records." Construing the request liberally, the court ruled that it sought not only correspondence in which "Town officials described individuals as definitively committing fraud," but also correspondence discussing "potential and suspected fraud by disability retirees." The court, therefore, ordered the Town to disclose any responsive documents in its possession.

3

The court further ruled that the petitioner was entitled to an award of attorney's fees and costs pursuant to the Right-to-Know Law because the Town "would not have turned over responsive documents" without her lawsuit and because it "knew or should have known it was violating the [Right-to-Know Law] by reading [her] request in such a restrictive way." See RSA 91-A:8. The Town subsequently submitted an additional 32 pages of documents, which included the February 24, 2020, March 12, 2020, and April 24, 2020 emails the petitioner had previously received from the OAG. This appeal followed.

On appeal, the parties dispute whether the trial court erred as a matter of law when it ruled that the Town was required to construe the petitioner's Right-to-Know request "liberally." It is well established under the federal Freedom of Information Act (FOIA) "that federal agencies have a duty to construe FOIA records requests liberally." Yagman v. Pompeo, 868 F.3d 1075, 1079 (9th Cir. 2017); see Nation Magazine, Washington Bureau v. United States, 71 F.3d 885, 890 (D.C. Cir. 1995); Rubman v. U.S. Citizenship & Immigration Services, 800 F.3d 381, 389-90 (7th Cir. 2015). Although federal law is not binding on our interpretation of the Right-to-Know Law, we often "consult the decisions of other jurisdictions with similar right to know laws," including federal interpretations of FOIA, because they "are interpretively helpful, especially in understanding the necessary accommodation of the competing interests involved." ATV Watch v. N.H. Dep't of Transp., 161 N.H. 746, 753 (2011) (quotation omitted); see 38 Endicott St. N. v. State Fire Marshall, 163 N.H. 656, 660 (2012).

However, we need not decide in this case whether there is a duty of liberal construction under the Right-to-Know Law because we conclude that, even if the Town had such a duty, its construction of the petitioner's request was reasonable under that standard. See American Oversight v. United States DOJ, 401 F. Supp. 3d 16, 34 (D.D.C. 2019) (explaining that although "[a]n agency must liberally construe a FOIA request, . . . it is not obligated to rewrite the request to ask for more than the requester did" (citation and quotation omitted)).

The petitioner's Right-to-Know request specifically sought correspondence in which retirees are described as "committing" fraud. She did not ask for correspondence relating to investigations of potential fraud. When, as in this case, the requester has "made a specific inquiry about specific actions," the governmental responder is "bound to read [the request] as drafted, not as either [governmental] officials or [the requester] might wish it was drafted." Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984) (deciding under FOIA). Under these circumstances, the Town's response that it had no

4

correspondence meeting the description in the petitioner's request was accurate and reasonable. Therefore, we reverse. The Town's motion for leave to correct oral argument is denied.

Reversed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; HICKS, J., dissented.

**Timothy A. Gudas,
Clerk**

HICKS, J., dissenting. My colleagues conclude that even if the respondent, the Town of Salem (Town), were required to construe the Right-to-Know request by the petitioner, Andrea Amodeo-Vickery, liberally, the Town's construction of the request was reasonable. I disagree with that conclusion and, therefore, dissent.

The duty to construe Right-to-Know requests liberally means that a governmental entity "may not withhold records that are reasonably within the scope of a request on the grounds that the records have not been specifically named by the requester." Wallick v. Agr. Marketing Service, 281 F. Supp. 3d 56, 67 (D.D.C. 2017). Nor may a governmental entity "read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." Hemenway v. Hughes, 601 F. Supp. 1002, 1005 (D.D.C. 1985) (finding that the agency's duty to construe federal Freedom of Information Act requests liberally compelled a broad interpretation of the records requested, even if a narrower reading was also reasonable). However, that is exactly what occurred here.

The Right-to-Know request alerted the Town that the petitioner knew the Town had provided the Office of the New Hampshire Attorney General (OAG) with a binder of information regarding "accidental disability retirees" suspected of wrongdoing. The Right-to-Know request sought "all written communications" between the OAG and Town officials regarding those individuals. (Emphasis added.) In the third paragraph of the request, the petitioner sought correspondence in which Town officials described those individuals "as committing 'fraud' in regard to their disability claims." Reading the petitioner's request as a whole, correspondence in which retirees were described as potentially committing fraud in regard to their disability claims falls within the scope of her request. Just as requesters "often have no way to know exactly what type of records an agency has in its possession," Rubman v. U.S. Citizenship & Immigration Services, 800 F.3d 381, 390 (7th Cir. 2015), so

5

too requesters often have no way to know the precise words an agency used in its correspondence.  "Because the [Town] had reasonably clear notice of what the [petitioner] sought, [it] had an obligation to provide" any correspondence, including emails, between the OAG and the Town discussing potentially fraudulent conduct by accidental disability retirees.  Hemenway, 601 F. Supp. at 1005 (construing federal Freedom of Information Act).  It was unreasonable of the Town to withhold documents in which accidental disability retirees were described as engaging in "possible fraudulent activity" merely because the retirees were not described as engaging in definitively fraudulent activity.  Accordingly, I would hold that the trial court correctly decided that the Town violated the Right-to-Know Law.