Rex H. REED, Appellant,

v.

NATIONAL LABOR RELATIONS BOARD, et al., Appellees.

No. 90–5147.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 31, 1991.

Decided March 15, 1991.

Hugh L. Reilly, Kensington, Md., for appellant.

Abby Propis Simms, Atty., N.L.R.B., with whom Margery E. Lieber, Asst. Gen. Counsel for Special Litigation, N.L.R.B., Washington, D.C., was on the brief, for appellees.

Before MIKVA, Chief Judge, and EDWARDS and THOMAS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

This case requires us to decide whether *Excelsior* lists, which the National Labor Relations Board (the "NLRB" or "Board") obtains from employers and distributes to unions in representation proceedings, may be disclosed to the public through the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 (1988). We conclude that the lists are protected from disclosure under Exemption 6 of the Act, and affirm the district court's entry of summary judgment for the Board.

## I.

Appellant Rex Reed requested that the NLRB disclose copies of *Excelsior* lists in representation cases closed after January 1, 1984, preferably limited to elections won by unions in states without right-to-work laws. *Excelsior* lists refer to the Board's practice of requiring employers involved in pending representation elections to submit a list containing the names and addresses of all employees eligible to vote, which the Board then makes available to the organizing unions. *Excelsior Underwear, Inc.*, 156 N.L.R.B. 1236 (1966); *see NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969).

The Board's FOIA officer denied Reed's request for the *Excelsior* lists, concluding that they were protected under Exemptions 6 and 7(C) of the Act. Exemption 6 allows agencies to withhold "personnel and medi-

cal files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while under Exemption 7(C) agencies may withhold "records or information compiled for law enforcement purposes" to the extent that production of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (7)(C). After the Board's Acting General Counsel denied his appeal, Reed filed a complaint in the district court.

On cross motions by the parties, the district court entered summary judgment for the Board, concluding that Exemption 6 protected the *Excelsior* lists from disclosure. *See Reed v. NLRB*, Memorandum Opinion and Order 1990 WL 136647 (D.D.C. May 15, 1990) [hereinafter *Order*]. The court found that (1) the lists constituted "similar files" within the meaning of Exemption 6; (2) the listed employees possessed a viable privacy interest in their names and addresses, even where the lists had previously been disclosed to parties in representation cases; and (3) there was no public interest in disclosure, given that the lists would reveal "little or nothing about" the NLRB's conduct. *Order* at 2–4. The court did not reach the Board's alternative argument that Exemption 7(C) also protected the lists from disclosure.

## II.

In reviewing the district court's entry of summary judgment for the Board, we must first "be sure that the district court has not overlooked or impermissibly resolved any disputed material facts; and second, we must ensure that the judge correctly applied the relevant law to these undisputed facts." *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990); *accord Sherwood v. Washington Post*, 871 F.2d 1144, 1145 (D.C.Cir.1989). As the facts of this case are not in dispute, we focus here on the propriety of the district court's application of controlling legal precedents.

A threshold question is whether *Excelsior* lists—which contain the names and addresses of all employees eligible to vote,

sometimes broken down by employment area or job category—constitute "similar files" within the meaning of Exemption 6. *See* 5 U.S.C. § 552(b)(6) (protecting "personnel and medical files and similar files"). Interpreting the legislative history of Exemption 6, the Supreme Court has instructed lower courts to construe the phrase "similar files" broadly, and to apply the exemption to any "Government records on an individual which can be identified as applying to that individual." *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601–02, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982) (citation omitted). Accordingly, decisions of this and other circuits have found names and addresses of individuals, like the *Excelsior* lists at issue here, to be "similar files." *See, e.g., National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989) [hereinafter *NARFE*] (noting that "NARFE does not dispute that the names and addresses of recent annuitants are covered by the phrase"), *cert. denied,* —— U.S. ——, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990); *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1273 (9th Cir.1984) (finding that *Excelsior* lists constitute "similar files"); *Wine Hobby USA, Inc. v. IRS*, 502 F.2d 133, 135 (3d Cir.1974) (names and addresses of federally registered wine producers are "similar files").

The next step under Exemption 6 involves identifying the relevant privacy interests in nondisclosure and the public interests in disclosure, and determining "whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *NARFE*, 879 F.2d at 874. The district court correctly concluded that employees possess a legitimate privacy interest in their names and addresses. *See Order* at 3. Reviewing an association's request for the names and addresses of retired federal employees, we recently held that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *NARFE*, 879 F.2d at 875. *See also Federal Labor Relations Auth. v. U.S. Dep't of the Treasury*, 884 F.2d 1446, 1452 (D.C.Cir.1989) (reaffirming *NARFE*'s privacy holding in context of current federal employees), *cert. denied,* —— U.S. ——, 110

S.Ct. 864, 107 L.Ed.2d 948 (1990); *Wine Hobby USA*, 502 F.2d at 137 (noting that an "individual may fervently wish [her home address] to remain confidential").

Reed nonetheless contends that the NLRB's prior disclosure of *Excelsior* lists to unions during representation proceedings and the Board's failure to place restrictions on the unions' use of the lists undermine the significance of the individuals' asserted privacy interests. As the district court recognized, however, the Supreme Court has expressly rejected such a "cramped notion of personal privacy," affirming "the privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1476, 1478, 103 L.Ed.2d 774 (1989) [hereinafter *Reporters Committee*]. Although *Reporters Committee* addressed Exemption 7(C), the Court noted the similarity of the inquiry under Exemption 6, *see* 109 S.Ct. at 1472–73, 1479; indeed, we have previously found the case controlling in the Exemption 6 context, *see NARFE*, 879 F.2d at 874. Reed's attempt to limit the employees' privacy interest in *Excelsior* lists simply cannot overcome the language and holding of *Reporters Committee*.

*Reporters Committee* also controls our analysis of the countervailing public interest in disclosure of *Excelsior* lists. The Supreme Court explained that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, and noted that "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal[ ] little or nothing about an agency's own conduct." *Reporters Committee*, 109 S.Ct. at 1481. *See also NARFE*, 879 F.2d at 879 (noting that "unless the public would learn something directly about the workings of the *Government*," there is no public interest in disclosure (emphasis in original)). The *Excelsior* lists at issue here contain exclusively private information and would

reveal nothing about the Board's conduct of representation proceedings or its performance of any other statutory duty. *See also Getman v. NLRB,* 450 F.2d 670, 680 (D.C.Cir.1971) (*Excelsior* lists "do not in any direct sense reveal anything about the Board's operations"). *Cf. Ray v. U.S. Dep't of Justice,* 908 F.2d 1549, 1556 (11th Cir.1990) (concluding that INS interview reports would reveal "what our government is doing and saying regarding Haitians who unsuccessfully attempt to flee to this country").

Reed nonetheless asks us to find a public interest in disclosure because he plans to use the *Excelsior* lists to correct allegedly widespread misrepresentations the Board has made to employees concerning compulsory union membership and dues requirements. Again, we remind Reed that we are an intermediate court, bound by the Supreme Court's unequivocal declaration in *Reporters Committee* that the identity and purpose of the requesting party are *irrelevant* under FOIA. *See Reporters Committee,* 109 S.Ct. at 1480 (disclosure "cannot turn on the purposes for which the request for information is made," and, except in cases involving privilege, "the identity of the requesting party has no bearing on the merits of" a FOIA request).

Left, then, to balance a viable privacy interest against a non-existent public interest, we agree with the district court that disclosure of the *Excelsior* lists would constitute an unwarranted invasion of personal privacy. *NARFE,* 879 F.2d at 879 ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."). Moreover, following the Supreme Court's instruction in *Reporters Committee* that "individual circumstances [may be] disregarded when a case fits into a genus in which the balance characteristically tips in one direction," 109 S.Ct. at 1483, we conclude that Exemption 6 protects *Excelsior* lists as a category— not merely those lists sought here by Reed. Indeed, the categorical nature of our holding flows directly from our analysis under Exemption 6; the balancing test we are instructed to administer contains no room for individualization or consideration of specific circumstances. *See NARFE,* 879

F.2d at 879 (Exemption 6 protects category of federal annuitants).

\* \* \*

Although the district court did not reach the question whether *Excelsior* lists are also protected from disclosure under Exemption 7(C), the Board urges this as an alternative disposition. Given our affirmance of the district court's Exemption 6 holding, we need not remand for consideration of Exemption 7(C). In any event, we are skeptical that *Excelsior* lists, obtained by the Board pursuant to routine pre-election procedures—not as part of a specific investigation into potential unfair labor practices—satisfy the threshold requirement of Exemption 7(C) that they be "compiled for law enforcement purposes." *See Birch v. U.S. Postal Serv.,* 803 F.2d 1206, 1209–10 (D.C.Cir.1986) (for agencies performing both law enforcement and administrative functions, only "investigations which focus directly on specifically alleged illegal acts" are covered by Exemption 7); *Committee on Masonic Homes of R.W. Grand Lodge v. NLRB,* 556 F.2d 214, 218–19 (3d Cir.1977) (finding that union authorization cards were not "compiled for law enforcement purposes," and stating that " 'law enforcement purposes' must relate to some kind of formal proceeding, and one that is pending").

### III.

For the foregoing reasons, we conclude that *Excelsior* lists are protected from disclosure under FOIA Exemption 6, and affirm the district court's entry of summary judgment for the Board.

*It is so ordered.*