**ALLIANCE FOR THE WILD ROCKIES, et al.,**
**Plaintiffs,**

v.

**DEPARTMENT OF THE INTERIOR, et al., Defendants.**

**No. CIV. A. 98–2912(SS).**

United States District Court,
District of Columbia.

June 23, 1999.

Eric Robert Glitzenstein, Meyer & Glitzenstein, Washington, DC, for plaintiffs.

Beverly M. Russell, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiff Alliance for the Wild Rockies is a not-for-profit organization dedicated to preserving native diversity in the Rockies and plaintiff Michael Bader serves as its executive director. Plaintiffs bring this action for declaratory and injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel defendants U.S. Department of the Interior ("DOI") and the Fish and Wildlife Service ("FWS") to disclose the names and addresses of individuals who submitted written comments to defendants' proposed rulemaking regarding the reintroduction of the grizzly bear into the Bitterroot ecosystem, which spans portions of Idaho and Montana.

The once populous grizzly bear is now a threatened species in North America. The Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, requires the FWS to take action to assure the "conservation and survival" of threatened and endangered species, such as the grizzly bear. 16 U.S.C. § 1533(f). Accordingly, in 1982, the FWS issued a formal Recovery Plan as part of its attempt to reintroduce the grizzly bear to an ecosystem that would allow it to flourish. Public participation has been encouraged by defendants as part of this process. The FWS organized a number of biologists to work in conjunction with a citizens work group in 1992 and integrated public comments in a revised recovery plan introduced in 1993. Defendants have also held several public hearings marked by the participation of over 300 interested individuals.

By notice of proposed rulemaking dated July 2, 1997, the FWS announced the Endangered Species Act Proposed Special Rule, which provided for the reintroduction of the grizzly bear in the Bitterroot ecosystem as a "nonessential experimental population." Reintroduction under this designation will provide the grizzly bears with lesser protection from potentially adverse human activities than is ordinarily accorded endangered and threatened species under the Endangered Species Act. Accordingly, the FWS solicited public comment on the proposal as well as on a draft environmental impact statement submitted pursuant to the National Environmental

Policy Act, 42 U.S.C. § 4332 *et seq.,* which outlined the environmental impact of the proposal and stated alternatives to the proposal. 62 Fed.Reg. 35,762 (1997). The notice of proposed rulemaking indicated that any final decision would include consideration of the comments submitted in response to the rulemaking. *Id.* at 35,768. The notice further specified that "[t]he complete file for this proposed rule is available for inspection, by appointment during normal business hours." *Id.* at 35,-763.

A total of 24,251 comments, ranging from individual letter to form letters to petitions, were received by the FWS in response to the proposed rulemaking.[1] It appears that approximately 9000 comments were submitted by individual citizens. Of the commenters who provided their addresses, 1784 are residents of Idaho and Montana, 505 are residents of other states, and two reside outside of the United States.

Plaintiffs first contacted the DOI in January 1988 to arrange for a review of the comments received by the DOI. Plaintiffs were interested in reviewing the comments to further its efforts in educating the public and other interested parties on grizzly bears, to publish an analysis of the comments in AWR's newsletter, to verify whether the DOI's accounting of comments is accurate, and to reveal the federal government's approach to public comments in the rulemaking setting.

The FWS responded that a review of the comments would be permitted but that the comments would be redacted to exclude the commenters' names and addresses. After a flurry of correspondence failed to result in the disclosure of unredacted comments, plaintiffs filed a formal FOIA request with the FWS by letter dated April 28, 1998. That request was denied by the FWS by letter dated July 21, 1998. In that letter, the FWS concluded that the names and addresses of all of the commenters were protected from disclosure, relying on exemption 6 of FOIA, 5 U.S.C. § 552(b)(6), which precludes disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The FWS expressed special concern that such disclosure would either reveal or lead to the revelation of an individual's home address and potentially subject that person to harassment for supporting a particular position.

An administrative appeal followed on or about July 30, 1998, which the DOI granted in part and denied in part by letter dated December 7, 1998. The DOI concluded that exemption 6 of FOIA did not apply to the names and work addresses of commenters who submitted comments in their official capacity as representatives of businesses or organizations, claiming that such individuals did not have a protectable privacy interest in their name and work addresses. On this basis, defendants released 212 unredacted comments for plaintiffs' review.

The DOI conceded that its general practice is to release the names of private individual commenters. Nonetheless, the DOI affirmed the FWS's position that exemption 6 applied to the names and addresses of comments submitted by private citizens. The DOI explained that commenters' privacy interests in their names and addresses become triggered in certain "special circumstances," namely when those comments pertain to a sensitive or controversial issue. The DOI enclosed for plaintiffs' review an internal DOI memorandum pertaining to their FOIA request as well as a general DOI memorandum regarding FOIA requests. Both memoranda articulated DOI's position that, in general, individuals who respond to a DOI solicitation for comments on an agency proposal voluntarily participate in a public

---

1. Of the 24,251 responses received, only one individual requested confidentiality. For purposes of their summary judgment motion, plaintiffs do not seek disclosure of this individual's name and address.

arena and thus do not have an expectation of privacy.

## ANALYSIS AND DECISION

### A. *The Applicable Standards of Review*

Pursuant to Rule 56(c) of the Fed.R.Civ. P., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In this case, there are no issues of material fact and the issue before the Court is solely one of law.

The Court reviews *de novo* defendants' refusal to disclose the commenters' names and addresses pursuant to FOIA. The burden rests on defendants to justify their decision. 5 U.S.C. § 552(a)(4)(B); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Southern Utah Wilderness Alliance, Inc. v. Hodel*, 680 F.Supp. 37, 39 (D.D.C.1988). The burden is not a light one. FOIA "itself contains a general presumption favoring disclosure." *Hodel*, 680 F.Supp. at 39.

### B. *Disclosure of Commenters' Names and Addresses Under the Freedom of Information Act*

The issue presently before the Court is a novel one. The Court must decide whether to uphold a federal agency decision denying an FOIA request for production of written comments with the commenters' names and addresses included, where the comments were voluntarily submitted in response to that agency's solicitation of comments in a notice of proposed rulemaking.

The starting point for an analysis of whether the defendants' conduct can be supported is with FOIA itself. FOIA was enacted in order to clarify the public disclosure obligations of the federal government as set out in the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* FOIA facilitates open access to federal government documents by members of the public. *Department of the Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). This mandate is not to be taken lightly. Congress did not intend for FOIA to be read as shielding government records from public scrutiny or limiting the availability of information from public review. *Id.* at 361. To the contrary, FOIA provides that such records and information should, upon reasonable request, be provided promptly. 5 U.S.C. § 552(a)(3). As the Supreme Court recognized, it is a "basic policy that disclosure, not secrecy, is the dominant objective" of FOIA. *Rose*, 425 U.S. at 361, 96 S.Ct. 1592.

Full disclosure of government records is not a meaningless exercise. It serves two important functions: it helps ensure an informed public and it subjects governmental action to the critical lens of public scrutiny. *Hodel*, 680 F.Supp. at 39.

As Congress recognized, however, not all government records and documents should be made available for public disclosure under FOIA. FOIA outlines nine exemptions to the general rule of disclosure in 5 U.S.C. § 553(b). Defendants rely on exemption 6 for their assertion that the names and addresses of commenters cannot be disclosed to plaintiffs. Exemption 6 specifies that FOIA disclosure does not apply to matters involving "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 553(b)(6).

Defendants do not assert that the comments sought for review by plaintiffs are personnel files or medical files.[2] Instead, they assert that the comments are "similar

---

**2.** Nor do defendants dispute that plaintiffs made a reasonable request to review the comments by letter dated April 28, 1998.

files," a position disputed by plaintiffs. The case law is silent as to whether written comments submitted in response to a notice of proposed rulemaking constitute "similar files" under exemption 6. Although the statute itself does not clarify what "similar files" are, the Supreme Court has endeavored to do so in *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), in accordance with congressional intent as expressed in the legislative history of FOIA. In *Washington Post*, the Supreme Court reasoned that "similar files" should be read expansively rather than narrowly, *id.* at 600, 102 S.Ct. 1957, and concluded that all information that "applies to a particular individual" is covered under exemption 6, regardless of the type of file involved. *Id.* at 602, 102 S.Ct. 1957; *Hodel*, 680 F.Supp. at 38.

█ Although it would appear that the names and addresses included on the written comments could fall within the scope of exemption 6, the Court need not make this determination because the Court finds that defendants have failed to demonstrate that the disclosure of the names and addresses "would constitute a clearly unwarranted invasion of personal privacy," in accordance with the second part of § 552(b)(6).[3] The Court recognizes that in certain circumstances, an individual has a privacy interest in his or her name and address. *See, e.g., Reed v. National Labor Relations Bd.*, 927 F.2d 1249, 1251 (D.C.Cir.1991). But FOIA exemption 6 requires more than just a demonstrated privacy interest; it requires a showing that a disclosure of the

commenters' names and addresses would result in a *"clearly unwarranted* invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  This determination is subject to a balancing test between the privacy interest in nondisclosure and the public interest in disclosure.[4]  *Rose*, 425 U.S. at 372, 96 S.Ct. 1592; *Reed*, 927 F.2d at 1251; *Hodel*, 680 F.Supp. at 38.

The defendants oppose disclosure of the commenters' names and addresses.  Although they concede that the DOI's FOIA policy recognizes that commenters generally do not expect that their names will remain confidential, they argue that a privacy expectation arises when certain "special circumstances" exist, namely when the comments pertain to sensitive or controversial issues.  When such "special circumstances" exist, defendants argue that exemption 6's balancing test is triggered, and when triggered in such situations, the commenters' privacy interests will trump any public interest in disclosure because disclosure of commenters' names and addresses do not increase the public's understanding of governmental activities and operations.

Contrary to defendants' assertions, the Court finds that the public interest in full disclosure of the written comments clearly outweighs the commenters' privacy interests, if any, in nondisclosure of their names and addresses.  In determining the public interest, only the extent to which disclosure will further the core purpose of FOIA—which is to increase the public's understanding of governmental operations and activities—is dispositive.[5]

---

**3.** The Court may approach an exemption 6 analysis on an efficiency basis by resolving the balancing of interests before it tackles the more difficult determination of whether the written comments constitute "similar files." *Board of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 398 (D.C.Cir.1980).

**4.** The D.C. Circuit recently enlarged the exemption 6 analysis to include a "consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the

information that could benefit them." *Lepelletier v. FDIC*, 164 F.3d 37, 48 (D.C.Cir.1999). If this factor is met, it appears that it would weigh in favor of disclosure, but if not met, it would not have any bearing on the balancing of interests.

**5.** The Court notes that the plaintiffs' identity and articulated purpose in seeking the comments have no bearing on the public interest determination. *Reporters Comm.*, 489 U.S. at 771, 109 S.Ct. 1468; *Reed*, 927 F.2d at 1252.

*Reporters Comm.*, 489 U.S. at 775, 109 S.Ct. 1468; *Rose*, 425 U.S. at 372, 96 S.Ct. 1592. In this instance, the public has much to learn about defendants' rulemaking process from the disclosure of commenters' names and addresses. The public will be able to determine how the defendants use the written comments in reaching a final rule; whether the defendants give greater weight to the comments submitted by experts in the field over the comments of laypeople; whether the defendants distinguish between multiple comments submitted by a single contributor when quantifying public sentiment; and whether the defendants give greater weight to the comments submitted by residents of the Bitterroot region and the outlying regions than to the comments submitted by those who do not live within close proximity to the Bitterroot region.

█ Just as critically, there is a considerable public interest in assuring governmental accountability. The notice that solicited the comments at issue specified that a "final decision on this proposal will take into consideration the comments and any additional information received by the [FWS]." 62 Fed.Reg. at 35,768; *see* 16 U.S.C. § 1533(f)(4). An agency decision formulating a final rule, which relies in part on written comments submitted by members of the public, clearly warrants full disclosure of those comments, including the names and addresses of the contributors. Public oversight of agency action in the rulemaking context serves a critical public function by protecting against agency overreaching and abuse of discretion.

Moreover, it is remarkable that defendants object to disclosure of the names and addresses of the commenters. The notice of proposed rulemaking made no reference to any limitations on the public's ability to review the comments submitted and instead specified that "[t]he complete file for this proposed rule is available for inspection, by appointment during normal business hours." 62 Fed.Reg. 35,762. The Court believes that the FWS made it abundantly clear in its notice that the individuals submitting comments to its rulemaking would not have their identities concealed. Had defendants intended otherwise, they could have taken efforts at the time the notice was published to assure commenters that their responses would be confidential or to offer them the opportunity to request anonymity. *See Ditlow v. Shultz*, 517 F.2d 166, 172 (D.C.Cir.1975); *Hodel*, 680 F.Supp. at 39. This they did not do.

The Court's decision also rests in part on the fact that the comments, which bear the commenters' names and addresses, were submitted voluntarily. Of the approximately 24,000 voluntary submissions, only one commenter requested anonymity. None of the remaining commenters raised an objection to public release of their comments. *See Hodel*, 680 F.Supp. at 39.

Defendants have argued in support of their refusal to disclose the names and addresses that several individuals have been harassed for expressing unpopular views at public hearings, and that withholding the names and addresses will protect commenters from the possibility of harassment. The problem with defendants' position is that it bases a denial of access to the names and addresses of individual commenters on a handful of claims of harassment. The defendants' decision to withhold the identifying information was not made on a commenter by commenter basis. Instead, defendants announced a wholesale bar to disclosure without inquiring on an individual basis the extent to which harm that was more than merely speculative would result.

Finally, the Court notes the defendants' unusual posture in light of their decision to disclose the names and addresses of institutional commenters. Defendants' distinction between comments submitted in an individual versus official capacity appears to be an arbitrary one.

An appropriate order accompanies this memorandum opinion.

### *ORDER*

It is hereby **ORDERED** that plaintiffs' motion for summary judgment be **GRANTED** and defendants' motion for summary judgment be **DENIED;** it is further

**ORDERED** that defendants shall promptly make available to plaintiffs all of the written comments submitted in response to the July 2, 1997 notice of proposed rulemaking, without redaction of commenters' names and addresses.