**JUDICIAL WATCH, INC., Plaintiff,**

v.

**DEPARTMENT OF the ARMY, Defendant.**

**Civil Action No. 04–301 (RMU).**

United States District Court, District of Columbia.

Nov. 17, 2005.

Meredith Leigh Cavallo, Paul J. Orfanedes, Jason B. Aldrich, Judicial Watch, Inc., Washington, DC, for Plaintiff.

Jonathan Eli Zimmerman, U.S. Department of Justice, Federal Programs Branch, Paul A. Diller, United States Department of Justice, Karen Louise Manos, Elizabeth B. McCallum, Howrey Simon Arnold & White, LLP, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING IN PART AND DEFERRING RULING IN PART ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE PLAINTIFF'S REQUEST FOR *IN CAMERA* INSPECTION OF DOCUMENTS

### I. INTRODUCTION

The plaintiff, Judicial Watch, Inc., is a nonprofit group seeking documents from the Department of the Army ("Army"), pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The defendant moves for summary judgment claiming that the documents withheld are properly classified under Exemptions 5 and 6 of FOIA. Because the plaintiff has demonstrated inaccuracies in the defendant's FOIA assertions, the court defers ruling on the defendant's motion for summary judgment as to that information and orders the government to produce those doc-

uments to the court for *in camera* review. Because the government has properly withheld information pursuant to Exemption 6, the court grants the defendant's motion for summary judgment as to that information.

## II. BACKGROUND

After the United States's invasion of Iraq in March 2003, the Army awarded a no-bid oil well firefighting contract to Kellogg, Brown & Root ("KBR"), a Halliburton Co. subsidiary. Vice-President Richard Cheney previously served as Halliburton's Chief Executive Officer and Chairman of the Board. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 1. The plaintiff theorizes that the Vice-President's past associations with Halliburton present more than a curious coincidence—that it "raise[es] concerns about the appearance of a conflict of interest or favoritism, particularly since the contract was awarded to KBR without a bidding process and because the contract was not announced to the public until after it had been approved." *Id.* at 1–2 (citing Michael Shanyerson, *Oh! What a Lucrative War*, VANITY FAIR, April 2005, at 138). In pursuing additional information from the government to corroborate its theory, the plaintiff sent two FOIA requests to the defendant. First, on April 6, 2003, the plaintiff sought information pertaining to

the decision of the U.S. Army to grant an Iraqi oil well firefighting contract to [KBR] ... [t]he decision to grant the contract to KBR without a bidding pro-

cess ... [t]he decision to request KBR to draft and/or "draw up" contingency plans for existing oil well fires in Iraq ... [and t]he time limit(s) and dollar limit(s) of the contract.

Compl. ¶ 5. Second, on June 16, 2003, the plaintiff sought information pertaining to

the decision of the U.S. Army to grant a contract to [KBR] to restart Iraq's oil production leading up to and after the 2003 Iraq war (January 1, 2003 through June 15th, 2003), including but not limited to: Contract costs, deadlines, compensation, spending limits, and bonus scales[, and] Monthly cost overruns, costs per month, itemized reports of all activities billed to the U.S. Government concerning KBR's (or any related subsidiary including the parent company of Halliburton) activities in Iraq between February 1st, 2003 to June 16th, 2003 ... [and] all information or correspondence related to the replacement of KBR's original contract estimated to happen in or about August 2003.

*Id.* ¶ 14. Having received no response from the defendant by February of the following year, the plaintiff filed the instant lawsuit. *See id.* ¶ 5. On March 19, April 19,[1] and December 13, 2004, the defendant provided the plaintiff with documents in response to its request. Pl.'s Opp'n at 4; Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 4. The defendant withheld 1,312 pages of documents in full from production and withheld part of 4,819 pages of documents.[2] Pl.'s Mot. at 4.

---

1. The defendant represents that the second date of document production was April 29, 2004, not April 19, 2004, as the plaintiff claims. This discrepancy, however, does not bear upon the issues presently before the court.

2. The parties dispute the breadth of documents currently at issue. Def.'s Mot. at 10 n. 6; Pl.'s Opp'n at 5 n. 3. According to the

defendant, the plaintiff previously indicated that it would challenge the withholding of three specific documents under Exemption 5. Def.'s Mot. at 10 n. 6. The plaintiff disputes this contention. Pl.'s Opp'n at 5 n. 3. As the court is addressing the defendant's motion for summary judgment, the court will construe this factual dispute in the plaintiff's favor.

Pursuant to a joint stipulation reached by the parties in April 2005, the plaintiff has limited its claims to documents withheld under Exemption 5 and 6 of FOIA. As such, the defendant limited its motion for summary judgment to information withheld pursuant to these two exemptions. The court now turns to the defendant's motion.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in FOIA Proceeding

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Cel-*

*otex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA,* 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C.Cir. 1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers,* 140 F.3d at 1080; *Vaughn,* 484 F.2d 820 (fashioning what is now commonly referred to as a "Vaughn index").

> The court may grant summary judgment to an agency on the basis of its affidavits if they:
>
> [ (a) ] describe the documents and the justifications for nondisclosure with reasonably specific detail, [ (b) ] demonstrate that the information withheld logically falls within the claimed exemption, and [ (c) ] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff c an rebut this presump-

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

tion with evidence of bad faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

## B. The Court Defers Ruling on the Defendant's Motion for Summary Judgment as to the Information Withheld under Exemption 5

### 1. Legal Standard for Exemption 5

Exemption 5 of FOIA protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C.Cir.1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin,* 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. At issue in this case is the deliberative-process privilege.

The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears,* 421 U.S. at 151, 95 S.Ct. 1504. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not, in fact, ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc). In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears,* 421 U.S. at 150, 95 S.Ct. 1504 (internal quotations omitted). Thus, the deliberative-process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992).

To invoke the deliberative-process privilege, the defendant must establish two prerequisites. *Id.* First, the communication must be "predecisional;" in other words, it must be "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774; *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir. 1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to a final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States,* 617 F.2d at 868. In other words, as long as a document is generated as part

of such a continuing process of agency decision-making, the deliberative-process protections of Exemption 5 may be applicable. *Id.; Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 39 (D.C.Cir.2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

■ Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn,* 484 F.2d at 823–24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports,* 926 F.2d at 1195 (quoting *Dudman Commc'n Corp. v. Dep't of Air Force,* 815 F.2d 1565, 1567–68 (D.C.Cir.1987)).

## 2. The Plaintiff has Demonstrated Inaccuracies in the Defendant's FOIA Assertions

■ The defendant asserts Exemption 5 to withhold from disclosure two specific documents[3] and a series of redactions on approximately 2,675 pages of disclosed documents. Def.'s Mot. at 10–15. The defendant asserts that it withheld "deliberative material ... dealing with the acquisition strategy and process ... draft responses and answers to communications from Congress ... [and] documents concerning communications with the public and the media." Def.'s Mot. at 12.

For example, the defendant claims that specific information contained in Document CE 6073–6078, entitled "Draft Communications Strategy" is properly withheld under the deliberative process privilege. *Id.*

at 10–12. With regard to Document CE 6073–6078, the defendant released all of the document except for a "draft Talking Points" section. *Id.* at 11. According to the defendant, because the information withheld in this document contains "extensive proposed changes ... its release could not only mislead the public but could also chill future written communications between Government employees." Def.'s Mot., Ex. 1 ("Frenette Decl.") ¶ 28. The *Vaughn* index attached to the defendant's motion for summary judgment indicates that Document CE 6073–6078 includes names, opinions, recommendations, and drafts. Def.'s Mot., Ex. 2 at 85. Also, the defendant characterizes Document CE 5307 as "an e-mail chain dated May 28, 2003, consisting of messages between [United States Army Corps. of Engineers] employees concerning an attached draft Acquisition Strategy that contains discussion of the proposed competition strategy, including source selection criteria, foreign participation, subcontracting, and the funding of future competitive procurement." *Id.* at 13 (citing Frenette Decl. ¶ 32).

For each category of documents withheld, the defendant provided an adequate justification that the documents are properly withheld. The explanations given by Frenette demonstrate both predecisional and deliberative documents. *Vaughn,* 523 F.2d at 1144.

In opposition to the defendant's motion for summary judgment, however, the plaintiff points to three discrepancies between the actual information withheld and the description of the information given by the defendant. First, the defendant redacted the text of an e-mail with the subject line "RIO Status Update" which was

---

**3.** The parties initially disputed the withholding of a third document, Document No. 518–520. Def.'s Mot. at 11. The defendant indi-

cates that this document was released to the plaintiff in full on March 23, 2005. *Id.,* Ex. 1 ("Frenette Decl.") ¶ 27.

sent on March 5, 2003 at 6:41 pm. Pl.'s Opp'n at 11 & Ex. 4. The defendant indicated that the withheld information concerned a deliberative process. *Id.* The substance of this e-mail, however, was revealed in a subsequent disclosure. Contrary to the government's assertion, the information contained in the e-mail is neither predecisional nor deliberative.[4] The defendant recognized the discrepancy yet suggested that it was unintentional, explaining that it corrected the error and produced the document immediately upon recognizing the error. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Reply") Ex. 1. ("Frenette Supp. Decl.") ¶ 8. While the court has no reason to doubt Frenette's assertions, the defendant provides no argument suggesting that this mistake is peculiar or unique to this specific document, an assertion which would have reassured the court that the error was not likely repeated throughout the document production. Frenette does not address how the document was misidentified as containing deliberative process information when no such information is present. The court, therefore, cannot be sure that the defendant's error was not repeated.

The plaintiff also points to unintentional disclosures of information withheld from an email string, part of a May 6, 2003 e-mail to support its contention that the defendant's document characterizations are not accurate. Pl.'s Opp'n at 12. For example, information contained in Document CE 5063 was redacted under Exemption 5, yet the concluding paragraph of the text states, "I need a coordinated policy decision from HQUSACE please." Pl.'s Mot., Ex. 5, at CE 5058. Perhaps the information contained in the previous paragraphs is predecisional and deliberative, but the concluding paragraph is not. Given the defendant's obligation to disclose reasonably segregable information, 5 U.S.C. § 552(b), this information should not have been characterized as deliberative process material.

The defendant's affiant asserts that "[i]t is unfortunate that I was not consistent in releasing some innocuous portions of these discussions to the Plaintiff but the releases only resulted in benefiting [sic] the Plaintiff."[5] Frenette Supp. Decl. ¶ 9. In

---

4. The text of the e-mail is as follows:

> Accompanied ORHA leader to get release of declass and authority to execute RIO. DepSecDef sent us to UnderSecPolicy Fieth and gave him authority to approve it.
> Declass–Fieth approved, contingent on informing WH tomorrow. We anticipate no issues since action has been coordinated [with] VP's office. Expect PA press release and Congressional coordination tomorrow AM and declass action to us early PM.
> Execution Authority–Fieth found recommendation compelling and decision memo well done. He agreed to sign early tomrrow [sic] AM once OSD Counsel and Comptroller concur. We got Counsel's concurrance [sic] right away. Comptroller had left for the day. ORHA leader gave action to ORHA comptroller to get concurrance [sic] soonest tomorrow AM. Expect Fieth will sign immediately. I mentioned

> indemnification issue to Fieth as potential hurdle-he understood.
> Great support from ORHA leader in pressing these issues. Am confident (at least as confident as one can be working these issues here) that both will be resolved to our satisfaction tomorrow.

5. This statement is troubling to the court. When the government inadvertently discloses information that is properly withheld, perhaps the error benefits the information seeker. While the inadvertent disclosure may be beneficial to the plaintiff, the disclosure reveals that the information was improperly characterized, and that it should have been disclosed in the first instance. The inappropriateness of the affiant's explanation for the inadvertent disclosure further undermines the court's confidence in the reliability of the government's information characterizations, and reinforces the court's determination that

*Vaughn,* the D.C. Circuit devised a scheme to "assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization." 484 F.2d at 826. The *Vaughn* court created an indexing system which places the burden on the government to justify the withholding. *Id.* at 827–828. This system, however, assumes that the government indexes its documents without abuse and without error. *See id.* The discrepancies identified in this case highlight the existence of either abuse or error. Pretermitting judgment as to which is at play, these errors undermine the court's confidence in the accuracy of the government's assertions.

The court recognizes that in the FOIA context, "only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information[.]" *Id.* at 824. Stripped of confidence that the government is accurately exercising this role, the court cannot accept the government's assertions. *Founding Church of Scientology of Wash., D.C. v. Nat'l Sec. Agency,* 610 F.2d 824, 837 (D.C.Cir.1979) (stating that "[i]f the agency can lightly avoid its responsibilities by laxity in identification or retrieval of desired materials, the majestic goals of [FOIA] will soon pass beyond reach"). Thus, "if, in the face of well-

defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, [FOIA] will inevitably become nugatory." *Id.*

Given the discrepancies highlighted by the plaintiff, the defendant cannot demonstrate to the court that its descriptions of the withheld information are accurate or proper. *Id.* at 836 (holding that even in instances in which the defendant has provided relatively detailed and nonconclusory supporting affidavits, "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order").

For this reason, the court defers ruling on the defendant's motion for summary judgment and orders the defendant to produce all of the disputed documents in which the defendant has invoked Exemption 5 to the court for *in camera* review within 45 days of this order.[6] 5 U.S.C. § 552(a)(4)(B) (stating that the court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions").

---

it needs to check the agency's FOIA assertions.

**6.** The D.C. Circuit cautions against voluminous *in camera* review by the district court. *Church of Scientology of Cal. v. I.R.S.,* 792 F.2d 146 (D.C.Cir.1986). In *Church of Scientology of Cal.,* however, the D.C. Circuit reversed the district court after it conducted an *in camera* review of nearly six thousand pages of documents in lieu of requiring the defendant to prepare a *Vaughn* index. *Id.* at 148. The appeals court noted that *in camera* review of a large number of documents "places unrealistic and unsustainable demands upon the trial court and the reviewing appellate

panel, and therefore must be replaced or supplemented by the adversary testing which public affidavits and indices seek to provide." *Id.* at 153. In the present case, by contrast, the defendant has provided both a *Vaughn* index and a public affidavit in support of its withholdings. Therefore, the defendant has produced the "supplemental" materials which the D.C. Circuit mentioned, and the court will conduct an *in camera* review solely to assess the accuracy of the affiant's assertions, rather than conducting an independent inquiry as to the proper classification of the documents.

### C. The Court Grants the Defendant's Motion for Summary Judgment as to the Information Withheld under Exemption 6

#### 1. Legal Standard for FOIA Exemption 6

■■ Exemption 6 of FOIA precludes from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "[S]imilar files" are broadly defined to include any "[g]overnment records on an individual which can be identified as applying to that individual." *See U.S. Dep't. of State v. Wash. Post Co.,* 456 U.S. 595, 601–602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). To determine whether a disclosure would constitute a clearly unwarranted invasion of personal privacy, the court must weigh the privacy interests in nondisclosure against the public interests in disclosure. *Norton,* 309 F.3d at 32 (citing *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 874 (D.C.Cir.1989)). Individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature. *See Wash. Post,* 456 U.S. at 600, 102 S.Ct. 1957 (stating that "information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet ... such information ... would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"). The quantum of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law. *Reed v. NLRB,* 927 F.2d 1249, 1252 (D.C.Cir.1991). In assessing the public interest, the court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny ... [and official] information that sheds light on an agency's performance of its statutory duties" merits disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (citation omitted). The purposes of FOIA are "not fostered," however, "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

#### 2. The Defendant's Employees' Privacy Interests outweigh the Public's Interests

The defendant withheld from disclosure the names and duty station information of the defendant's employees in documents responsive to the plaintiff's FOIA request.[7] Def.'s Mot. at 16–18. The defendant contends that this information is exempt from disclosure under Exemption 6 and that its release would subject these employees to "annoyance or harassment in either their official or private lives." *Id.* (citing *Baez v. U.S. Dep't of Justice,* 647 F.2d 1328, 1339 (D.C.Cir.1980)). The plaintiff asserts, however, that the defendant has failed to meet its burden of demonstrating that the threat to these employees' privacy is real rather than merely speculative. Pl.'s Opp'n at 15. The court disagrees.

■ The privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that "could conceivably

---

7. The defendant indicates that the names of senior-level officials and public affairs personnel were released. Def.'s Mot. at 17.

subject them to annoyance or harassment in either their official or private lives." *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C.Cir.1980); *see also Nix v. United States*, 572 F.2d 998, 1006 n. 8 (4th Cir.1978) (noting that, to implicate a federal employee's privacy interest under FOIA, harassment does not have to rise to the level that life or physical safety is in danger). The fact that federal employees have an identifiable privacy interest in avoiding disclosures of information that could lead to annoyance or harassment, however, does not authorize a "blanket exemption" for the names of all government employees in all records. *Baez*, 647 F.2d at 1338; *Lesar*, 636 F.2d at 487. To justify their Exemption 6 withholdings, the defendants must show that the threat to employees' privacy is real rather than speculative. *Rose*, 425 U.S. at 380 n. 19, 96 S.Ct. 1592.

■■■ In the present case, the defendant explains that as Department of Defense employees, "[these individuals] and their families, are particularly vulnerable to harassment and attack and therefore there is a heightened privacy interest in their identities." Def.'s Mot. at 17 (citing Frenette Decl. ¶ 42). The defendant continues that "the attack on the Pentagon made clear that *all* defense personnel are potential targets of terrorist violence, regardless of what component of [the Department of Defense] they work in, what they do, and where they are assigned." *Id.* The documents released by the defendants will likely be published on the Internet once released to the plaintiff, and it is likely that readers of the plaintiff's reports, including media reporters as well as private individuals, would seek out the employees mentioned for further information. *See Southam News v. Immigration and Naturalization Serv.*, No. 85 Civ. 2721, slip. op. at 3 (D.D.C. Aug. 30, 1989) (holding that the "the only imaginable contribution that" personal identifying information could make "would be to enable the public to seek out individuals" to question them). This contact is the very type of privacy invasion that Exemption 6 is designed to prevent.[8]

The court must balance the employees' privacy interests against the public interest in the disclosure of the information. *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495–96, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). The plaintiff bears the burden of demonstrating the public interest in the information. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391–92 nn. 8 & 13 (D.C.Cir.1987). The plaintiff, however, does not make any specific representations regarding the public's interest in the Department of Defense employees' names. Thus, they have failed to provide the court with any argument to balance against the employees' privacy interests. For this reason, the court grants

---

8. The plaintiff argues that the defendant has improperly applied Exemption 6 because "the names that were redacted were not the subject matter of the files, but rather, names that were simply 'referred to' in the file." Pl.'s Opp'n at 17. This argument assumes that disclosure creates an unwarranted invasion of that individual's privacy only when the individual is the subject of the disclosed information. The Supreme Court has unequivocally held, to the contrary, that "the balancing of private against public interests, not the nature of the files in which the information was contained, should limit the scope of the exemption." *Dep't of State v. The Wash. Post., Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). The court continued that Exemption 6 covers "all private or personal information contained in other files which, if disclosed to the public, would amount to a clearly unwarranted invasion of the privacy of any person." *Id.* at 602, 102 S.Ct. 1957 (citing Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 36 (June 1967)).

the defendant's motion for summary judgment as Exemption 6 information.

The discrepancy which undermined the reliability of the defendant's assertion of Exemption 5 information does not undermine the court's confidence in the defendant's assertions regarding Exemption 6. This is so because the information withheld pursuant to Exemption 6 appears mostly in the heading section of e-mails or following the closing salutation—intuitive locations for Exemption 6 information. Thus, when the defendant provides the documents for *in camera* review, it need not provide the information withheld under Exemption 6.

## IV. CONCLUSION

For all the foregoing reasons, the court grants in part and defers ruling in part on the defendant's motion for summary judgment and orders the defendant to produce the documents withheld under Exemption 5 to the court for *in camera* review within 45 days. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of November, 2005.